### A10A0036. THE PSALM 23 PROJECT, INC. et al. v. H. J. RUSSELL & COMPANY.
(698 SE2d 379)

BARNES, Presiding Judge.

H. J. Russell & Company ("Russell") sued The Psalm 23 Project, Inc. ("Psalm 23") and The Promise Project, Inc. ("Promise Project") for payments due under several construction contracts. Both defendants answered, and Psalm 23 filed a counterclaim alleging that Russell owed it money. Following discovery, Russell moved for summary judgment on its claims and Psalm 23's counterclaim. The trial court granted the motion, and the defendants appeal. For the reasons that follow, we affirm in part and reverse in part.

1. Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. *Mustaqeem-Graydon v. Suntrust Bank*, 258 Ga. App. 200, 205 (1) (573 SE2d 455) (2002). We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences favorably to the nonmoving party. Id.

So viewed, the record shows that in the late 1990s, Green Pastures Christian Ministries, Inc. ("Green Pastures") decided to build two independent living facilities for senior citizens on land it owned in DeKalb County. Green Pastures was awarded two grants from the United States Department of Housing and Urban Development ("HUD") to assist in the construction costs. It then formed two not-for-profit corporations — Psalm 23 and Promise Project — to own and operate the separate facilities.

On July 1, 2004, Psalm 23 contracted with Russell, a general contractor, to construct the first facility, which became known as Green Pastures Commons I. That same day, Promise Project contracted with Russell to construct Green Pastures Commons II, the second facility. As required by county authorities, Psalm 23 also entered into a standard American Institute of Architects ("AIA") agreement with Russell to widen the road fronting the facilities for an entrance lane and to build a "lift station" to pump sewage from the property.

The AIA agreement obligated Psalm 23 to pay Russell $800,000

for the road widening and lift station project. HUD regulations prohibited Psalm 23 from using grant money to fund this type of "offsite" work. The regulations also demanded, however, that the work be completed. HUD thus required Psalm 23 to escrow the $800,000 needed to pay for the project. Although Psalm 23 did not have the necessary funds, Green Pastures raised $800,000 by selling land that it owned next to the assisted living facility sites to Etowah Development, Inc. ("Etowah"). Psalm 23 placed this money into an escrow account in July 2004.

Approximately eight months later, on March 1, 2005, Green Pastures, Etowah, and Russell entered into a separate agreement regarding the road widening and lift station project ("the March 2005 agreement"). Apparently, Etowah planned to develop a subdivision on the property it had purchased from Green Pastures and wanted to use the entrance way and lift station. Under this new agreement, Green Pastures and Etowah expressed a desire to "share in the cost of" certain infrastructure work that included, but was not limited to, the road widening, entrance way, and lift station improvements. They thus agreed that Green Pastures would be responsible for one-third of the project costs, while Etowah would bear two-thirds of the costs. The contract provided that Green Pastures had "escrowed funds necessary to cover its . . . share of the Costs, which shall not exceed the amount of $800,000." It also obligated Etowah to perform work on the infrastructure project and submit invoices for Green Pastures' share of the costs to Russell, which would review the invoices and obtain payment approval from HUD.

Without dispute, Russell built the two facilities and completed the contract work. On June 8, 2006, it requested $71,674.55 from Psalm 23 for final payment under the AIA agreement. That same day, it sent letters indicating that final payment of $100,959 from Psalm 23 and $107,811 from Promise Project would be due on the Green Pastures Commons I and Commons II projects "[u]pon authorization by HUD." In August 2007, HUD issued closing memoranda designating August 17, 2007, as the "Date of Final Closing" for both projects. Later that fall, Russell demanded final payment as to these two contracts, as well as the outstanding balance on the AIA contract.

When Psalm 23 and Promise Project did not remit the requested sums, Russell filed suit, seeking payment of principal due under the three contracts plus interest and attorney fees. Psalm 23 filed a counterclaim, alleging that Russell owed it money relating to the road widening and lift station project. According to Psalm 23, the March 2005 agreement modified the AIA contract and reduced its $800,000 liability by two-thirds. In its view, it did not owe any money on the project and, in fact, had substantially overpaid Russell

following the modification. Ultimately, Psalm 23 sought to recover approximately $500,000 from the general contractor.

After several months of litigation, Psalm 23 and Promise Project paid the principal balances owed under the Green Pastures Commons I and Commons II contracts. Disputes remained, however, about the interest owed under these contracts, as well as liability relating to the road widening/lift station project. Russell subsequently moved for summary judgment. The trial court granted the motion, awarding Russell $30,287.70 in interest on the Green Pastures Commons I contract; $32,343.30 in interest on the Green Pastures Commons II contract; and $71,645.55 in principal owed under the AIA contract, plus $29,386.57 in interest. The court also dismissed Psalm 23's counterclaim as moot.

Psalm 23 and Promise Project challenge these rulings on appeal. Psalm 23 argues that issues of fact remain as to its liability under the AIA contract and its counterclaim against Russell. Both defendants also question the interest awarded on the various contracts.

(a) Psalm 23 claims that its $800,000 obligation under the July 2004 AIA contract was modified by the March 2005 agreement executed by Green Pastures, Etowah, and Russell. The contracts at issue, however, do not support this claim. The AIA contract clearly obligated Psalm 23 to pay Russell $800,000 for the road widening and lift station work. Nothing in the March 2005 agreement altered this obligation. The agreement did not reference the AIA contract or Psalm 23. And despite Psalm 23's claims, the March 2005 agreement did not reduce its liability to Russell by two-thirds or require Russell to forfeit or pay back any portion of the $800,000 allocated for the work. Rather, the agreement provided that Etowah and Green Pastures would share (on a two-thirds to one-third basis) the cost of infrastructure work that included, but was not limited to, the road widening and lift station, and it capped Green Pastures' payment at $800,000 — the amount already escrowed for the road widening and lift station project.

Absent an ambiguity, a court must enforce a contract as written. *ESI Companies v. Fulton County*, 271 Ga. App. 181, 183 (1) (a) (609 SE2d 126) (2004). Certainly, the March 2005 agreement lacks clarity in some respects. The fact that it does not reference Psalm 23, for example, is odd. But the agreement's language cannot be interpreted as altering the AIA contract or reducing Psalm 23's liability under that contract by two-thirds. At best, it confirmed that Green Pastures/Psalm 23's obligation for *all* work covered by the March 2005 agreement would not exceed $800,000, which is entirely — and unambiguously — consistent with the AIA contract. See *Neely Dev. Corp. v. Service First Investments*, 261 Ga. App. 253, 255 (1) (a) (582 SE2d 200) (2003) (word or phrase is ambiguous if "it is of uncertain

meaning and may be fairly understood in more ways than one"). Although Psalm 23 now claims that the parties intended the March 2005 agreement to modify the AIA contract, the agreement does not reflect this intention and must be enforced as written. See *ESI Companies*, supra.

Finally, Psalm 23 argues that the parties orally agreed to modify the AIA contract, then memorialized that modification through the March 2005 agreement. Again, however, the March 2005 agreement does not reveal any modification, and the signatories stipulated that the document constituted the "sole and entire agreement between the parties." Under these circumstances, we will presume "that the writing contains the entire contract, and parol evidence of prior or contemporaneous representations or statements is inadmissible to add to, take from, or vary a written contract." *Rome Healthcare v. Peach Healthcare System*, 264 Ga. App. 265, 271-272 (4) (590 SE2d 235) (2003).

As found by the trial court, the March 2005 agreement did not modify Psalm 23's $800,000 obligation to Russell. Accordingly, the trial court did not err in awarding Russell the principal balance due under the AIA contract and dismissing Psalm 23's counterclaim as moot.

(b) We are concerned, however, by the trial court's interest calculation on the three contracts in this case. Russell sought interest under all contracts pursuant to OCGA § 7-4-16, which allows the owner of a commercial account to "charge interest on that portion of [the] account which has been due and payable for 30 days or more at a rate not in excess of $1^{1}/_{2}$ percent per month calculated on the amount owed from the date upon which it became due and payable until paid." Psalm 23 and Promise Project concede that Russell is entitled to interest on the principal balances owed under the Green Pastures Commons I and II contracts "from the time [they] became due until they were paid in June of 2008." The defendants argue, however, that the record does not support the amount of interest actually awarded on summary judgment.[1]

With respect to the Green Pastures Commons I and II contracts, the trial court apparently concluded that, as a matter of law, final payments became due in November 2005, when Russell completed its work. Pursuant to the contracts, however, the final payments were not due absent authorization by HUD. Russell sent both defendants letters indicating that, as of June 8, 2006, the necessary authorization had not yet been received. Moreover, Russell did not

---

[1] We find no merit in Russell's claim that Psalm 23 and Promise Project waived their right to appeal the trial court's interest calculations.

demand final payment under these contracts until after HUD issued its project closing memoranda in August 2007.

Given this evidence, questions of fact remain as to when final payment on the Green Pastures Commons I and II accounts became due. Similarly, final payment under the AIA contract was due "no later than 30 days after the issuance of the Architect's final Certificate for Payment." The trial court's order does not specify when this final condition occurred, and Russell has not cited us to any evidence establishing the necessary date. Accordingly, because factual issues exist as to the amount of pre-judgment interest owed on the three contracts, Russell was not entitled to summary judgment on the interest claims. See *Garrett v. Atlantic Bank & Trust Co.*, 157 Ga. App. 103, 104 (1) (276 SE2d 152) (1981) (summary judgment inappropriate where questions of fact remained as to amount of interest due on note).

2. Before Russell requested summary judgment, Green Pastures moved to intervene in the action as a plaintiff with respect to Psalm 23's counterclaim. According to Green Pastures, it was a party to the "modification" embodied in the March 2005 agreement and should be allowed to participate in the counterclaim proceedings. The trial court denied the motion to intervene in its summary judgment order.

The defendants enumerate this ruling as error. As we found in Division 1 (a), however, the March 2005 agreement did not modify the AIA contract, and the trial court properly dismissed Psalm 23's counterclaim as moot. In light of the dismissal, the motion to intervene — and this claim of error — are moot as well. See *Weir v. Kirby Constr. Co.*, 213 Ga. App. 832, 836 (4) (446 SE2d 186) (1994) (issue is moot when it will not affect proceedings below).

3. Finally, Psalm 23 and Promise Project argue that the trial court's order improperly imposed joint and several liability on them for all of the contract indebtedness.[2] It is not clear that the trial court actually imposed joint and several liability. Russell, however, did not seek joint liability on the contract claims or demonstrate that such liability would be appropriate. Accordingly, to the extent the trial court found Psalm 23 and Promise Project jointly and severally liable for sums due under the three contracts at issue, it erred.

*Judgment affirmed in part and reversed in part. Bernes, J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED JULY 8, 2010.

---

[2] Despite Russell's claim, Psalm 23 and Promise Project did not waive this allegation of error for purposes of appeal.

*Freisem, Macon, Swann & Malone, C. Cyrus Malone III*, for appellants.

*Molden, Holley & Thompson, Regina S. Molden*, for appellee.